923 So.2d 1245 (2006)
Corretia T. JONES, as Personal Representative of the Estate of Earnestine Cox Mosley, Deceased, Appellant,
v.
TALLAHASSEE MEMORIAL REGIONAL HEALTHCARE, INC., a Florida non-profit corporation, Appellee.
No. 1D04-4656.
District Court of Appeal of Florida, First District.
March 23, 2006.
*1246 Maria P. Sperando, of Gary, Williams, Parenti, Finney, Lewis, McManus, Watson & Sperando, P.L., Stuart, for appellant.
Laura Beth Faragasso and Jesse F. Suber, of Henry, Buchanan, Hudson, Suber & Carter, P.A., Tallahassee, for appellee.
PER CURIAM.
Appellant, Corretia T. Jones, the personal representative of the estate of Earnestine Cox Mosley, challenges a final summary judgment entered in favor of appellee, Tallahassee Memorial Regional Healthcare, Inc. (TMH), in a medical malpractice action based on the catastrophic injuries suffered by Mosley during an elective surgical procedure at TMH's hospital in which anesthesia services were provided by Dr. J. Anthony Giralt, an anesthesiologist, and Ray Johns, a certified registered nurse anesthetist, both of whom were at all relevant times employed by Anesthesiology Associates of Tallahassee, P.A. (AAOT). Appellant asserted various claims of vicarious liability against TMH based on, among other things, the theory that Giralt and Johns were TMH's apparent agents, and the theory that TMH had a nondelegable duty to provide non-negligent anesthesia services to Mosley. We reverse the summary judgment on appellant's apparent agency claim because there was a genuine issue of material fact as to that claim precluding summary judgment in favor of TMH as a matter of law. We affirm the summary judgment on appellant's nondelegable duty claim because we have determined that the nondelegable duty doctrine should not apply in circumstances like these where the active tortfeasors were an independent contractor physician and his employee who was at all times acting only under the physician's *1247 supervision.[1] As to all other issues, we affirm without comment.
Generally, the question of a health care professional's apparent authority to act as a hospital's agent is a question of fact best left to the jury. See, e.g., Roessler v. Novak, 858 So.2d 1158, 1162 (Fla. 2d DCA 2003). As the Second District Court of Appeal explained in Roessler,
An apparent agency exists only if all three of the following elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation. Apparent authority does not arise from the subjective understanding of the person dealing with the purported agent or from appearances created by the purported agent himself. Rather, apparent authority exists only where the principal creates the appearance of an agency relationship.
Id. at 1161-62 (internal citations omitted).
It is well-settled that a hospital's granting of staff privileges to a particular health care provider, without more, is insufficient as a matter of law to create a jury question on whether the hospital impliedly represented to the public that the health care provider was the hospital's apparent agent. See Liberatore v. NME Hosps., Inc., 711 So.2d 1364, 1366 (Fla. 4th DCA 1998) (affirming summary judgment in favor of hospital based on conclusion that hospital's granting of staff privileges to non-employee physician was insufficient to create jury question on issue of whether physician was acting as the hospital's apparent agent); Reed v. Good Samaritan Hosp. Ass'n, Inc., 453 So.2d 229, 230 (Fla. 4th DCA 1984) ("We, therefore, hold ... that under the facts presented here, the hospital is not vicariously liable for the tortious acts of an independent contractor such as a physician in private practice to whom it has merely granted staff privileges."); see also VanStelle v. Macaskill, 255 Mich.App. 1, 662 N.W.2d 41, 50 (2003) ("[T]he fact that a doctor has staff privileges at a hospital, by itself, is insufficient to establish an agency relationship.").
In this case, the primary evidence relied on by appellant in support of her claim that Giralt and Johns were the apparent agents of TMH was that they were required to abide by medical staff rules and regulations, they were required to be on-call to provide services within their specialty as a condition of having privileges at the hospital, they wore identification badges identifying their specialty and bearing TMH's name, and they were required to identify themselves to patients as members of the "medical staff" of TMH. Even if all of this evidence arose only as a result of TMH granting Giralt and Johns staff privileges at its hospital, and was therefore construed as being insufficient as a matter of law to raise any issue of material fact as to whether the two men were TMH's apparent agents, the ambiguity in this record as to whether TMH or Mosley chose Giralt as the anesthesiologist for *1248 Mosley's surgical procedure added a layer of factual uncertainty relative to the apparent agency claim which precluded entry of summary judgment on that claim as a matter of law.[2]
The courts of this state have taken differing and conflicting approaches on the issue of whether the lack of patient choice as to a particular treating physician is enough to create a question of fact for the jury on the issue of a hospital's apparent authority over the physician. In Izquierdo v. Hialeah Hospital, Inc., 709 So.2d 187 (Fla. 3d DCA 1998), the Third District Court of Appeal noted the law on apparent authority and determined in that case that there was "no evidence that Hialeah Hospital partook in any activities to create the appearance of an agency relationship," notwithstanding that the allegedly negligent physicians had been provided by the hospital and not chosen by the patient. However, the Second and Fifth District Courts of Appeal appear to have taken a different view.
In Orlando Regional Medical Center, Inc. v. Chmielewski, 573 So.2d 876, 879 (Fla. 5th DCA 1991), the Fifth District determined that even though "[t]he record established, without dispute, that [the hospital] made no express representations to the public or to the Chmielewskis, positive or negative, concerning [the emergency room physician's] employee status," the record evidence was sufficient to create a jury question on the issue of the physician's apparent authority to act for the hospital because "[t]he Chmielewskis assumed [the physician] worked for [the hospital] because he was furnished to them once they arrived in [the hospital's] emergency room." In Cuker v. Hillsborough County Hospital Authority, 605 So.2d 998, 1000 (Fla. 2d DCA 1992), the Second District relied on the holding in Chmielewski, and determined that hospital liability premised on the apparent agency doctrine was not limited to the emergency room setting. On similar facts, the Second District in Roessler reversed a summary judgment entered in favor of a hospital because genuine issues of material fact existed as to the physician's apparent authority to act on behalf of the hospital. See Roessler, 858 So.2d at 1160-63.
While the argument can be made that a hospital's provision of a physician to a patient involves nothing more than the indication that the physician has staff privileges, it appears the weight of authority holds that lack of choice on the part of the patient is sufficient to create a jury question on an apparent agency claim involving a hospital. In reaching this result, we note apparent conflict with the decision in Izquierdo.
In his concurring opinion in Roessler, Judge Altenbernd noted the uncertainty in the law of apparent authority in the context of hospital liability, and commented that "in the context of a complex institution like a hospital that has many interrelated independent contractors working side-by-side for the same customers," the *1249 patient "does not usually have the option to pick among several independent contractors at the hospital and has little ability to negotiate and bargain in this market to select [his or her] preferred [health care provider]." Roessler, 858 So.2d at 1164-65 (Altenbernd, J., concurring). Judge Altenbernd argued that a theory of hospital liability based on the nondelegable duty doctrine, as adopted by this court in Shands Teaching Hospital & Clinic, Inc. v. Juliana, 863 So.2d 343 (Fla. 1st DCA 2003), would provide more reliable results in the field of medical liability than the theory of apparent authority. See Roessler, 858 So.2d at 1164-65 (Altenbernd, J., concurring).
However, our holding in Shands cannot support liability on TMH's part in the circumstances presented in this case because Shands only recognized that the nondelegable duty doctrine could support a finding of liability on the part of a hospital for the actions of an independent contractor perfusionist. See Shands, 863 So.2d at 346-49. This court specifically stated in Shands that it was not addressing whether a hospital could be held liable under the nondelegable duty doctrine for the actions of an independent contractor physician:
The present case differs importantly from cases in which physicians, as opposed to nurses or technologists, have established independent contractor relationships with hospitals. The general rule is that a hospital is not liable for the negligent acts of a physician who is not its employee, but an independent contractor.
Id. at 349. Shands also did not address the issue of whether a hospital could be liable, under the nondelegable duty doctrine, for the actions of an employee of an independent contractor physician who was at all times acting under the supervision of the physician. See id. at 349 n. 7 (noting that the perfusionist was not "employed by or under contract to the surgeon, the anesthesiologist or any other person or entity that played a part in [the patient's] open-heart surgery, other than Shands").
In this case, Johns was at all times an employee of AAOT. He was also under Giralt's supervision, and not the surgeon's, during the entire procedure. We, therefore, decline to extend the nondelegable duty doctrine to create liability on the part of TMH for the actions of Giralt and Johns in this case.
Based on the foregoing, we reverse the trial court's entry of summary judgment on the apparent agency claim, and remand for further proceedings on that claim. In all other respects, we affirm.
BARFIELD, WOLF, and BROWNING, JJ., concur.
NOTES
[1] Even though it is clear from the record that TMH never had a contractual agreement, either written or unwritten, with AAOT prior to or at the time of Mosley's surgical procedure providing that AAOT would be the exclusive or primary provider of anesthesia services at TMH's hospital, it is equally clear from the record that the physicians employed by AAOT were at all times independent contractors of TMH. See Wilson v. Sandstrom, 317 So.2d 732, 739 (Fla.1975) ("`[A]n independent contractor is one who, in the exercise of an independent employment, contracts to do certain work according to his own methods, and without being subject to the control of his employer except as to the product or result of his work.'") (quoting 17 Fla. Jur. Independent Contractors § 2).
[2] TMH argues that the record affirmatively demonstrates that the general public, at the time of Mosley's surgery, clearly had notice of the independent contractor status of Giralt and Johns by virtue of the "About Your Physician Care" document given to every surgical patient at the hospital at the time of admission, and the "Anesthesiology Associates of Tallahassee" name tags worn by AAOT nurse anesthetists but not TMH-employed nurse anesthetists. However, in the absence of record evidence showing that Mosley actually received the "About Your Physician Care" document, or ever noticed the differing name tags, this evidence merely supports our conclusion that genuine issues of material fact exist with regard to the apparent agency claim precluding summary judgment as a matter of law.